IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SIDNEY CARMICHAEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0602-WS-B |
| | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, etc., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 31). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 31-32, 35-36), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1 at 11-13), the plaintiff's employer ("ThyssenKrupp") shipped large coils of steel via rail cars provided by the defendant. Employees of the defendant trained the plaintiff and other ThyssenKrupp employees in the proper procedures to be used in loading the cars. The plaintiff was injured as a consequence of using a technique he learned in the training. The complaint asserts that the defendant "negligently trained ThyssenKrupp employees in an unsafe work method for adjusting bulkheads on cars." (*Id*. at 12, ¶ 9(a)).[1] The defendant argues that it had no legal duty and that the plaintiff has no evidence that it breached any such duty. (Doc. 31 at 2).[2]

---

[1] The complaint identifies other forms of negligence as well, (*id*., ¶ 9(b)-(d)), but the plaintiff acknowledges he has insufficient evidence with which to pursue these

**DISCUSSION**

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Id*.  "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a

---

theories, and he "does not oppose this Court entering partial summary judgment" as to them.  (Doc. 35 at 2).

[2] While the defendant mentions in passing the concept of proximate cause, (Doc. 31 at 2; Doc. 32 at 16), it presents no argument as to this element of the plaintiff's cause of action.  Because "a passing reference to an issue in a brief [is] insufficient to properly raise that issue," *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005), the defendant has failed to present any issue concerning proximate cause.

genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

Each steel coil, once loaded on a rail car, is kept in place by means of movable bulkheads that run along tracks in the car and that can be nestled snugly against a coil. Once moved into the desired position, a bulkhead is kept in place

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

by means of pins on each end of the bulkhead, which are placed through holes in the bulkhead and in the rail car. Each pin is connected to the bulkhead by a chain.

Certain ThyssenKrupp employees, including the plaintiff on occasion, were responsible for manually moving the bulkheads into position. The plaintiff was injured when he attempted to move a bulkhead by pulling on the chain and/or the pin. The chain broke, causing the plaintiff to fall.

The plaintiff has evidence that, before he began his involvement in loading the defendant's rail cars, two employees of the defendant came to the ThyssenKrupp plant and trained about ten or twelve ThyssenKrupp employees – including the plaintiff – in how to load the cars with steel coils. In demonstrating how to move a bulkhead into position, the defendant's employees moved the bulkhead by pulling on the chains. (Doc. 31-1 at 24-35). The plaintiff has also presented the testimony of another ThyssenKrupp employee ("Fails"), who witnessed the same thing at the training. (Doc. 35-2 at 5-10).[4]

### A. Existence of a Duty.

The parties agree that Alabama law governs. "It is a clearly established doctrine in this jurisdiction that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting reasonably, and is liable in damages for injury resulting from a breach of that duty." *Rudoph v. First Southern Federal Savings & Loan Association*, 414 So. 2d 64, 67 (Ala. 1982). The plaintiff relies upon this doctrine. (Doc. 35 at 10). According to the plaintiff, the defendant "undertook a duty to instruct TK employees on the safe method of loading coil rail cars." (*Id.*; *accord id.* at 29).

The plaintiff notes that the individual apparently in charge of the training ("Moore") testified that he came to ThyssenKrupp "to teach ThyssenKrupp

---

[4] The defendant denies that its employees pulled on the chains, (Doc. 32 at 15), but its version of events, to the extent contradicted by the plaintiff's evidence, is of course irrelevant on motion for summary judgment.

employees the proper and safe way to load the car." (Doc. 31-4 at 13; *accord* Doc. 35-5 at 6). The defendant responds that the only "safety" with which it was concerned was that of the cargo and of its rolling stock, not the "personal safety" of ThyssenKrupp employees. (Doc. 36 at 9). The defendant asserts that a voluntary duty must be assumed "intentionally and knowingly,"[5] and it argues that it neither knew it was assuming a duty to train ThyssenKrupp employees on personal safety in moving bulkheads nor intentionally did so. (Doc. 32 at 21-22).

      It is not clear why the defendant sees "personal safety" as a distinction that makes a difference. The defendant admits its mission was to teach the employees the proper way to load a rail car. A necessary component of loading a rail car with steel coils is the movement of the bulkheads into position to secure each coil, and Moore testified that part of his mission was to offer instruction on "the proper procedure for placing the bulkhead in position to restrain the load." (Doc. 31-4 at 13). Thus, regardless of whether the training was motivated by concern for the employees' personal safety, it seems clear the defendant deliberately undertook to train the ThyssenKrupp employees on the proper means of moving the bulkheads.

      But even if it matters whether the defendant intentionally and knowingly undertook to instruct the employees as to personal safety, there is evidence that it did so. The plaintiff testified that the defendant's employees talked about "all kind of general safety," including "how you safely get up on a railcar and using three points of contact, climbing up the ladders, that sort of thing." (Doc. 31-1 at 29). They also said "something about be careful on the platform because it ain't but so wide," since the platform was several feet off the ground, (*id*. at 30), such that it presented a fall hazard. Fails confirmed that the defendant's employees mentioned "some do's and don'ts" regarding "generally safety things" like "how to get up on the car safely." (Doc. 35-2 at 6). A properly functioning jury could reasonably infer from this evidence that the defendant undertook to train the ThyssenKrupp

---

      [5] These terms do not appear in the authorities to which the defendant cites.

5

employees on how to load the rail cars – including how to move the bulkheads – with regard to their personal safety.

The defendant suggests it could not have assumed a duty to train the employees concerning their personal safety because it had a "self-interest" in having the rail cars properly loaded, since proper loading reduces the risk of an in-transit accident. (Doc. 32 at 22). The single case on which the defendant relies, however, does not support the proposition that the mere existence of self-interest precludes the existence of a voluntarily assumed duty to another.

In *Parker v. Thyssen Mining Construction, Inc.*, 428 So. 2d 615 (Ala. 1983), the plaintiff was injured by a collapsing wall. His employer collected samples of the mortar mix for analysis but, according to the plaintiff, failed to use reasonable care in the preservation of this potential evidence for the plaintiff's lawsuit against the mix's manufacturer and distributor. The plaintiff sued his employer for negligence in handling the mortar samples. *Id*. at 616-18. The Court noted the employer's self-interest in collecting and analyzing the samples (since it lost manpower, time and money in the incident), but also noted: (1) the absence of evidence the employer realized the plaintiff intended to sue the manufacturer or distributor; (2) the absence of evidence the employer lost, mishandled or destroyed any samples; and (3) the employer's compliance with an order to turn over to the plaintiff all samples in its possession. *Id*. at 618. "Under these facts [that is, all those just listed, in combination], we are unwilling to impose on [the employer] the duty of obtaining evidence needed to enhance [the plaintiff's] potential third-party action." *Id*.

The defendant has not shown that the three additional circumstances on which the *Parker* Court relied, or any suitable substitutes for them, are present here. As the *Parker* Court noted, "[t]he existence of a voluntarily assumed duty through affirmative conduct is a matter for determination in light of all the facts and circumstances." 428 So. 2d at 618. Without showing that the congeries of facts and circumstances present in *Parker* – or something clearly equivalent – is

6

also present here, the defendant cannot obtain summary judgment merely by showing that it did not act from purely altruistic motives.

The defendant also cites a Fourth Circuit railroad case applying New York law, (Doc. 32 at 20-21), but the facts of that case are so different from those here as to be unhelpful to the defendant, especially given the defendant's failure to demonstrate that Alabama would follow New York law in any event.

The defendant complains that ThyssenKrupp is a large, sophisticated employer, and it seems to suggest that ThyssenKrupp is thus the "only entity" with a duty to train ThyssenKrupp employees in the proper and safe movement of the bulkheads. (Doc. 32 at 19). This is a non sequitur, at least without authority – which the defendant does not offer – that one cannot voluntarily assume a duty if another already has such a duty.

Next, the defendant asserts generally that it owed no duty under Section 324A of the Restatement (Second) of Torts because it did not "undertak[e] … to render services to another which [it] should recognize as necessary for the protection of a third person or his things." (Doc. 36 at 13-14). But the discussion above reflects that a properly functioning jury could find that the defendant did recognize, or at least should have recognized, that its proper training of ThyssenKrupp employees was necessary for their protection.

Finally, the defendant "submits" that it could not have assumed a duty to train the employees as to safe or proper means of moving the bulkheads unless its employees explicitly told the ThyssenKrupp employees that the practice of pulling on the chains was safe and proper. (Doc. 32 at 23). The defendant offers no reason to embrace the facially implausible proposition that whether a duty to train was assumed depends on whether the training was performed verbally or by demonstration, and the Court will not construct or support a rationale on the defendant's behalf.

In summary, the defendant has failed to show that, accepting the plaintiff's version of facts and the reasonable inferences therefrom, as a matter of Alabama

law the defendant did not voluntarily assume a duty to train the plaintiff as to proper and personally safe methods of moving the bulkheads.

### B. Breach of Duty.

The totality of the defendant's argument is this: "plaintiff's testimony that he allegedly observed the Norfolk Southern representatives adjust the bulkheads by pulling on the chains during that brief one-time meeting several years ago (over a year before his [sic] incident at issue) does not constitute evidence that these Norfolk Southern representatives were <u>negligent</u> in their presentation that day." (Doc. 32 at 23 (emphasis in original)).

Perhaps the plaintiff's testimony does not establish the defendant's failure to use reasonable care, but Moore's testimony does. He confirmed six separate times that it is improper and unsafe to use the chains to move the bulkheads, and he asserted that teaching employees to do so would be to "encourage[e] people to do something that's dangerous." He also verified that the defendant was fully aware of this at the time of the training at issue here. (Doc. 35-5 at 5, 9).

### CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted** with respect to the theories of liability set forth in the complaint in paragraph 9(b)-(d) and is otherwise **denied**.

DONE and ORDERED this 23rd day of December, 2015.

                                              s/ WILLIAM H. STEELE
                                              CHIEF UNITED STATES DISTRICT JUDGE